JUDGE FURMAN

14 CV 4555

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

DUSTIN MARK MACOLOR,

                            Plaintiff,

              -vs-

RHANDY R. LIBIRAN, AMERICAN MANPOWER
RESOURCE PROVIDER INC., MICHAEL URBINO,
AXIS POINT ALTERNATIVE SOLUTIONS, INC.,
and AMERICAN HEALTHCARE FACILITY
MANAGEMENT GROUP, INC.,

                          Defendants.

-------------------------------------------------------------------------X

**COMPLAINT**

Plaintiff Demands
A Jury on All
Issues to be Tried

RECEIVED
JUN 24 2014
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiff DUSTIN MARK MACOLOR, by his undersigned attorneys, for his Complaint against the defendants, alleges as follows:

1.      This is an action for damages and other remedies for violations of the Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1589 *et seq.*, the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq.*, the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, and the New York State Labor Law, N.Y. Lab. L. §§ 650, *et seq.*, and for breach of contract, fraud, unjust enrichment, and *quantum meruit*.

2.      Defendants recruited plaintiff in the Philippines and induced him to travel to the United States with false promises that they would employ him full time at $31.15 per hour. After plaintiff traveled to the United States at his own expense, defendants initially required plaintiff to work as a "volunteer" without any compensation. Defendants then failed and refused to give plaintiff full-time employment or to pay him the agreed upon rate of $31.15 per hour.

3.      When plaintiff told the defendants that he needed to find alternative employment if they could not provide full-time work, the defendants attempted to prevent him from leaving their employ by threatening to sue him for $20,000 in so-called "liquidated damages."  The defendants then retained a collection agency that demanded plaintiff pay $20,000 in principal, a $6,666.66 collection fee, and $1,063.01 in unspecified interest.

4.      At the time the defendants made these threats and demands for payment, they knew that the so-called $20,000 in "liquidated damages" was actually an illegal and unenforceable penalty.  The defendants also knew that there was no basis for asserting a claim for collection fees or interest.

5.      The individual defendants, Rhandy R. Libiran and Michael Urbino, carried out their fraudulent foreign labor recruiting scheme and illegal threats through multiple corporate entities they own and control, including defendants American Manpower Resource Provider Inc., Axis Point Alternative Solutions, Inc., and American Healthcare Facility Management Group, Inc.

6.      Disregarding corporate forms and formalities, the individual defendants dominated and controlled the corporate defendants in an illegal scheme to place plaintiff in a state of indentured servitude and cheat him out of his right to full-time work and compensation.

### Jurisdiction and Venue

7.      This Court has jurisdiction over the federal law claims pursuant to 28 U.S.C. § 1331 (federal question), 18 U.S.C. § 1595(a) (civil trafficking), 29 U.S.C. § 216(b) (FLSA), and 15 U.S.C. § 1692k(d) (FDCPA).  This Court has supplemental

2

jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because the state law claims form part of the same case or controversy as the federal law claims.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to plaintiffs' claims occurred in this District.

**The Parties**

9.      Plaintiff DUSTIN MARK MACOLOR ("Macolor") is a former employee of the defendants.  He is licensed as a physical therapist in the State of New York.

10.     Defendant RHANDY R. LIBIRAN ("Libiran") is and was at all relevant times President of defendant American Manpower Resource Provider, Inc., President of defendant American Healthcare Facility Management Group Inc., and Vice President of defendant Axis Point Alternative Solutions, Inc.  Defendant Libiran at all relevant times exercised managerial or supervisory responsibility for personnel decisions at the corporate defendants, including personnel decisions affecting plaintiff.

11.     Defendant AMERICAN MANPOWER RESOURCE PROVIDER, INC. ("American Manpower") is and was at all relevant times a corporation organized under the laws of the State of New York with a principal place of business at 116 West 23rd Street, 5th Floor, New York, New York 10011.  Upon information and belief, defendant American Manpower is and was at all relevant times owned and/or controlled by defendants Libiran and Urbino.

12.     Defendant MICHAEL URBINO ("Urbino") is and was at all relevant times Chief Executive Officer of defendant American Healthcare Facility Management Group Inc. and President of defendant Axis Point Alternative Solutions, Inc.  Defendant

3

Urbino at all relevant times exercised managerial or supervisory responsibility for personnel decisions at the corporate defendants, including personnel decisions affecting plaintiff.

13.     Defendant AXIS POINT ALTERNATIVE SOLUTIONS, INC. ("Axis Point") is and was at all relevant times a corporation organized under the laws of the State of New Jersey with a principal place of business at 80 River Street, Hoboken, New Jersey 07030.  Defendant Axis Point is registered with the New York State Secretary of State to do business in the State of New York and, upon information and belief, regularly conducts business in this State.  Upon information and belief, defendant Axis Point is and was at all relevant times owned and/or controlled by defendants Libiran and Urbino.

14.     Defendant AMERICAN HEALTHCARE FACILITY MANAGEMENT GROUP, INC. ("American Healthcare") is and was at all relevant times a corporation organized under the laws of the State of New Jersey with places of business at 80 River Street, Hoboken, New Jersey 07030 and at 7014 13th Avenue, Brooklyn, New York 11228.  Defendant American Healthcare is registered with the NYS Secretary of State to do business in the State of New York and, upon information and belief, regularly conducts business in this State.  Upon information and belief, defendant American Healthcare is and was at all relevant times owned and/or'controlled by defendants Libiran and Urbino.

15.     Defendants American Manpower, Axis Point, and American Healthcare are referred to collectively in this complaint as the Corporate Defendants.

4

## Statement of Claims

16.     In October 2012, plaintiff attended a seminar entitled "Work in America: Learn the Success Formula (PT Version)" at a shopping mall in Manila, Philippines. While attending the seminar, plaintiff met defendants Rhandy Libiran and Michael Urbino.  Defendants Libiran and Urbino had organized the seminar to recruit physical therapists to work for their companies in New York.

17.     A few days after the seminar, defendant Urbino, identifying himself as President and CEO of defendant American Healthcare, sent a follow-up email to plaintiff in the Philippines.

18.     Defendant Urbino encouraged plaintiff to "pursue to work in the United States." He told plaintiff that there was "significant" demand for physical therapists in the United States and that plaintiff would be "rewarded aptly [sic]" if he chose to pursue his "dream career" in this country with defendant American Healthcare.

19.     In November 2012, Liza Fagarita sent a series of follow-up emails to plaintiff in the Philippines.  Ms. Fagarita identified herself as "a Healthcare Recruiter for American Healthcare Facility Management Group, Inc." and used an American Healthcare email address.  She told plaintiff that defendant American Healthcare is "continuously hiring candidates."

20.     Ms. Fagarita told plaintiff that she was given his email address by "Mr. Michael Urbino and Mr. Rhandy Libiran." She explained that plaintiff could begin working immediately as a physical therapist in the United States on a "limited permit." "The validity of your limited permit is good for 6 months," she wrote, "and it is renewal of another 6 months.  You need to pass your licensure examination within a year."

21.     Ms. Fagarita, still identifying herself as an employee of defendant American Healthcare and still using an American Healthcare email address, sent plaintiff the defendants' standard employment contract.  The contract listed the employer as defendant American Manpower.  Ms. Fagarita referred to the document as "our contract" and "our Employment Contract."

22.     The proposed employment contract required that the employee pay "liquidated damages" of $20,000 in the event the employee was terminated for cause, breached the contract, or left the defendants' employ before the end of the contract term.  Ms. Fagarita explained that this payment was designed to reimburse the employer for legal fees and other costs related to providing immigration assistance to non-immigrant employees who required visas and other working papers.  The payment was also designed to reimburse the employer for the employee's travel and housing expenses.

23.     In their November 2012 email exchanges, Ms. Fagarita and plaintiff agreed that plaintiff did not require any immigration, housing, or travel assistance.  Ms. Fagarita and plaintiff agreed that plaintiff would bear his own costs for credentialing and processing papers to work in the United States, visa screen certifications, travel from the Philippines, and housing in the United States.

24.     On November 27, 2012, Ms. Fagarita acknowledged in an email to plaintiff that the defendants "will be exerting no expenses for your immigration status" and that the defendants "won't be paying for your housing accommodation during your stay in the US."

25.     On November 30, 2012, Ms. Fagarita encouraged plaintiff to make a decision quickly about accepting the defendants' offer of employment in the United

States. Insinuating to plaintiff that time was running out, Ms. Fagarita told plaintiff that she "had another meeting with Rhandy and Mike this morning" and that they "are currently finalizing all the potential candidates for next year."

26.    On or about December 2, 2012, plaintiff signed an employment contract with defendants.

27.    Between January and March, 2013, defendant Urbino communicated with plaintiff in the Philippines via an exchange of emails. He also met in person with plaintiff in the Philippines during this time period. Defendant Urbino explained the process of obtaining a physical therapist license from the New York State Department of Education and assured plaintiff that "we can provide you with the job as soon as you pass the exam and a license is awarded by the State." Defendant identified himself as a representative of defendant Axis Point and used his Axis Point signature block in these email exchanges with plaintiff.

28.    In September 2013, defendant Libiran traveled to the Philippines for purposes of recruiting physical therapists to work for the defendants in New York.

29.    Before leaving for the Philippines, defendant Libiran sent plaintiff an email referring to plaintiff's "application" for a "Physical Therapy position here in New York." Defendant Libiran told plaintiff that the defendants were in "the process of collecting all the names of qualified individuals," and offered to meet with plaintiff in the Philippines.

30.    Plaintiff and defendant Libiran met in the Philippines on or about September 4, 2013.

31.     After their meeting in the Philippines, plaintiff and defendant Libiran agreed to sign a new employment contract for plaintiff to work for the defendants in New York.  The new contract (the "Contract") was signed as of September 24, 2013 and superseded the contract that plaintiff had signed in December 2012.

32.     The Contract referred to defendant American Manpower as the employer and to plaintiff as the employee.  It provided that defendant American Manpower would employ plaintiff at $31.15 per hour as a full-time physical therapist for 6,240 hours. Defendant American Manpower also agreed to pay sick leave of up to 3 days per year, holiday pay for 6 mandatory holidays per year, medical and dental benefits, and malpractice insurance.  The Contract prohibited plaintiff from working for any other entity without the written permission of defendant American Manpower.

33.     The contract provided that defendant American Manpower would reimburse certain of plaintiff's costs and expenses up to a maximum of $2,000, but that plaintiff would be required to pay so-called "liquidated damages" of $20,000 if he is terminated for cause, or if he otherwise breaches any of the provisions of the agreement and stops working for defendant American Manpower.

34.     The Contract states that it "shall be governed by and construed in accordance with the laws of the State of New York."

35.     Between November 6, 2013 and November 7, 2013, defendant Libiran sent several emails to plaintiff in the Philippines.  Defendant Libiran assured plaintiff that he would be employed at "one of our facility [sic] in Long Island" immediately upon plaintiff's arrival in New York.

36.     Plaintiff arrived in New York on Friday, November 29, 2013. The
defendants picked up plaintiff at JFK International Airport and brought him directly to
their offices.

37.     Immediately after plaintiff's arrival in New York, defendants directed him
to work as a "volunteer" at the Dynamic Physical Therapy clinic in Jamaica, Queens.
Plaintiff worked at the Dynamic Physical Therapy clinic for 40 hours. Defendants did
not pay plaintiff any compensation for this work.

38.     Between December 1, 2013 and March 30, 2014, defendants did not
employ plaintiff full time. During this four-month period, they provided him with only
35.5 hours of paid work, or less than one full week of full-time work.

39.     Between December 1, 2013 and March 30, 2014, defendants did not pay
plaintiff the contractually agreed compensation rate of $31.15 per hour. Defendants paid
plaintiff $30.79 for 35.5 hours of work.

40.     Between December 1, 2013 and March 30, 2014, plaintiff was paid only
$1,093 for four months, or $273 per month. After taxes, plaintiff received net
compensation of only $892 for four months, or $223 per month.

41.     Defendants paid plaintiff with paychecks that listed the phone number of
American Manpower as (201) 683-5611. That is the phone number of a New Jersey
corporation, Adriland Institute Inc., which is also owned and controlled by defendants
Libiran and Urbino.

42.     Between December 1, 2013 and March 30, 2014, defendants repeatedly
reminded plaintiff that he must remain available to work for the defendants exclusively

and that if he attempted to work for anyone else, then they would sue him for $20,000 in so-called liquidated damages.

43.     Plaintiff passed the New York State licensing exam for physical therapists on February 4, 2014 and was issued a physical therapist license on February 12, 2014.

44.     In February and March 2014, Plaintiff told defendants Libiran and Urbino that he could not survive in New York on $223 per month.  He asked the defendants to give him full-time employment at $31.15 per hour.  Plaintiff asked defendants Libiran and Urbino for assurances that the defendants would be able to perform their contractual obligations.

45.     On April 2, 2014, defendant Urbino admitted that the defendants were unable or unwilling to perform their contractual obligations.

46.     Defendant Urbino admitted that the only work the defendants had lined up for plaintiff was for one day at a clinic in the Bronx and for three days at a clinic in Rockaway.  Defendant used his Axis Point email to send this message to plaintiff.

47.     While defendant Urbino claimed that "we are currently working on your interview schedule" with an unspecified nursing home in the Bronx, he did not give plaintiff any assurances that plaintiff would be employed full time or paid $31.15 per hour as required by the Contract.

48.     After receiving no assurances of full-time employment from defendants, plaintiff told defendants Libiran and Urbino that he had to seek employment elsewhere. Defendants Libiran and Urbino once again threatened to sue plaintiff for $20,000 in so-called "liquidated damages" if he sought other employment.

49.     Faced with the very real prospect that he would have no money to pay for basic necessities such as food and a place to live, plaintiff sought and obtained work with a different employer.

50.     Defendants immediately hired a collection agency that began sending letters to plaintiff and calling him at home demanding payment of $27,729.67.  The collection agency's letters stated that the amount due was comprised of $20,0000 in principal, $6,666.66 in collection fees, and $1,063.01 in interest.

## FIRST CLAIM FOR RELIEF AGAINST
## ALL DEFENDANTS FOR VIOLATIONS OF THE
## TRAFFICKING VICTIMS PROTECTION ACT (TVPA)

51.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 50 above as if fully restated herein.

52.     Plaintiff was held in a condition of servitude by defendants through a subtle and sophisticated scheme of non-violent coercion, including threatened and actual psychological, financial and reputational harm that was sufficiently serious to compel a reasonable person of the same background as plaintiff to continue performing services for defendants in order to avoid that harm.

53.     Defendants Libiran and Urbino, directly and through others, repeatedly threatened plaintiff that he would owe the defendants $20,000 if he obtained employment with anyone else or otherwise left the defendants' employ.

54.     Defendants Libiran and Urbino, directly and through others, frequently warned plaintiff that he could not work for any other employer because of the exclusive employment and non-compete provisions in his employment contract.

55.     Defendants Libiran and Urbino, directly and through others, kept plaintiff in a state of constant financial insecurity and uncertainty.

56.     At the time these threats were made, plaintiff had little or no money, and had no ability to pay for food and shelter other than working as a physical therapist. Under these circumstances, plaintiff reasonably feared serious financial and reputational harm if he did not continue working for defendants.

57.     Upon information and belief, defendants' threats were made with the intent to cause plaintiff to believe that he would suffer serious psychological, financial or reputational harm if he did not continue working for defendants.

58.     Defendants also took advantage of the particular culture and values of plaintiff as a Filipino to instill a sense of fear and obligation.  Upon information and belief, defendants Libiran and Urbino are Filipino-Americans who are intimately familiar with Filipino culture and values, including the uniquely Filipino concepts of *utang na loob* ("an inner debt"), *hiya* ("shame"), and *kapwa* ("shared personhood").  The Filipino concept of *utang na loob* is often described in English as an obligation to repay a debt or favor, but it has a deeply personal and internal dimension that is foreign to most western cultures.

59.     By reason of the conduct described above, defendants were perpetrators of violations of 18 U.S.C. §§ 1589, 1590, 1594(a), and 1594(b).

60.     Defendants knowingly benefited, financially or by receiving something of value, from participation in a venture which defendants knew or should have known has engaged in violations of 18 U.S.C. §§ 1589, 1590, 1594(a), and 1594(b).

61.     Defendants knowingly provided and obtained the labor and services of plaintiff by means of abuse and threatened abuse of law or legal process and by means of a scheme, pattern or plan intended to cause plaintiff to believe that he would suffer serious harm in the event he did not perform labor or provide services.

62.     Defendants knowingly benefited, financially and by receiving the benefits of plaintiff's labor and services, from participation in a venture which defendants knew or should have known was engaged in the acts set forth in this complaint.

63.     Defendants' conduct constitutes violations of the following sections of Title 18, Chapter 77 of the United States Code:  18 U.S.C. §§ 1589, 1590, 1594(a), and 1594(b).

64.     Plaintiff is entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

## SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT (FLSA) 29 U.S.C. § 206

65.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 64 above as if fully restated herein.

66.     The Corporate Defendants have at all relevant times regulated the employment of plaintiff and all other persons employed by them, acted directly and indirectly in their own interest in relation to the employees, and are thus employers of their employees within the meaning of section 3(d) of the Fair Labor Standards Act ("FLSA").

13

67.     Defendants Libiran and Urbino at all relevant times were in active control and management of the Corporate Defendants, regulated the employment of plaintiff and all other persons employed by the Corporate Defendants, acted directly and indirectly in the interest of the Corporate Defendants in relation to the employees, and thus are employers of their employees within the meaning of section 3(d) of the FLSA.

68.     The business activities of the defendants, as described in this complaint, were related and performed through uniform operation or common control for a common business purpose and constitute an enterprise within the meaning of section 3(r) of the FLSA.

69.     Defendants have employed and are employing employees at their places of business in activities of an enterprise engaged in commerce.  Upon information and belief, the enterprise has had an annual gross volume of sales made or business done in an amount not less than $500,000.00.  Therefore plaintiff was at all relevant times employed in an enterprise engaged in commerce within the meaning of section 3(s)(1)(A) of the FLSA.

70.     Defendants willfully and repeatedly violated the provisions of sections 6 of the FLSA, 29 U.S.C. § 206, by employing plaintiff in an enterprise engaged in commerce without paying plaintiff the minimum wage for all hours worked.

71.     Defendants are liable for unpaid minimum wages together with an equal amount in liquidated damages or, in the event liquidated damages are not awarded, unpaid minimum wages together with prejudgment interest on said unpaid minimum wages.

## THIRD CLAIM FOR RELIEF AGAINST
## ALL DEFENDANTS FOR VIOLATIONS OF
## THE NEW YORK STATE LABOR LAW
### N.Y. Labor Law §§ 650, *et seq.*

72.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 71 above as if fully restated herein.

73.     Defendants' failure to pay plaintiff the proper minimum wage violates New York Labor Law §§ 650, *et seq.*, and is actionable under New York State Labor Law § 663(1).

74.     Defendants' failure to pay plaintiff the proper minimum wage was intentional.

## FOURTH CLAIM FOR RELIEF AGAINST
## ALL DEFENDANTS FOR VIOLATIONS OF THE
## FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. §§ 1692e, 1692f, and 1692k

75.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 74 above as if fully restated herein.

76.     Defendants, acting directly and through their agents, have used false, deceptive, or misleading representations or means in connection with the collection of an alleged debt in violation of 15 U.S.C. § 1692e.

77.     Defendants, acting directly and through their agents, have falsely represented the character, amount, or legal status of an alleged debt in violation of 15 U.S.C. § 1692e(2)(A).

78.     Defendants, acting directly and through their agents, have falsely represented the services rendered or compensation which may be lawfully received by a

debt collector for the collection of an alleged debt in violation of 15 U.S.C. § 1692e(2)(B).

79.     Defendants, acting directly and through their agents, have threatened to take action to collect an alleged debt that cannot legally be taken or that is not intended to be taken in violation of 15 U.S.C. § 1692e(5).

80.     Defendants, acting directly and through their agents, have used false representations or deceptive means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. § 1692e(10).

81.     Defendants, acting directly and through their agents, have used unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. § 1692f.

82.     Defendants, acting directly and through their agents, have violated 15 U.S.C. § 1692f(1) by attempting to collect amounts (including interest charges and collection fees incidental to the principal obligation) that are not expressly authorized by the agreement allegedly creating the debt or permitted by law.

### FIFTH CLAIM FOR RELIEF AGAINST
### ALL DEFENDANTS FOR BREACH OF CONTRACT

83.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 82 above as if fully restated herein.

84.     Defendants Libiran and Urbino exercised complete domination and control of defendants American Manpower, Axis Point, and American Healthcare to the extent that there is no distinction between or among any of the corporate or individual defendants.

85.     Defendants Libiran and Urbino used their complete dominance and control of defendants American Manpower, Axis Point, and American Healthcare to commit fraud and wrongdoing against plaintiff.

86.     Defendants Libiran and Urbino intentionally caused plaintiff to believe, and plaintiff reasonably believed, that he was employed by all of the defendants.

87.     Defendants Libiran and Urbino intentionally caused plaintiff to believe, and plaintiff reasonably believed, that all of the defendants would jointly perform the employer's obligations under the Contract.

88.     Defendants Libiran, Urbino, American Manpower, Axis Point, and American Healthcare are jointly and severally bound by the Contract and liable for any breach thereof.

89.     Defendants breached the Contract by failing to provide plaintiff with full-time employment for 6,240 hours.

90.     Defendants breached the Contract by failing to pay plaintiff a base compensation of $31.15 per hour for the time he actually worked for defendants.

91.     Defendants breached the Contract by failing to pay plaintiff a base compensation of $31.15 per hour for 6,240 hours.

92.     Defendants breached the Contract by failing to pay plaintiff for sick leave, mandatory holidays, and vacation time.

93.     Defendants breached the Contract by failing to provide plaintiff with medical benefits, dental benefits, and malpractice insurance coverage for the 6,240-hour term of the Contract.

17

94.     Defendants breached the Contract by constructively discharging plaintiff without cause.

95.     By reason of the foregoing, plaintiff has been damaged in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF AGAINST
## ALL DEFENDANTS FOR A DECLARATORY JUDGMENT

96.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 95 above as if fully restated herein.

97.     An actual controversy has arisen and exists between the parties concerning defendants' demand for payment of so-called "liquidated damages," collection fees, and interest.

98.     Defendants are not entitled to recover any liquidated damages, collection fees, or interest because the defendants breached the Contract.

99.     Defendants are not entitled to recover any liquidated damages, collection fees, or interest because the defendants constructively discharged plaintiff.

100.    Defendants are not entitled to recover any liquidated damages, collection fees, or interest because the so-called "liquidated damages" constitute an illegal and unenforceable penalty.

101.    Defendants are not entitled to recover any collection fees or interest under the terms of the Contract.

102.    Plaintiff seeks a declaratory judgment that he does not owe any liquidated damages, collection fees, or interest to any of the defendants or their agents or representatives.

## SEVENTH CLAIM FOR RELIEF AGAINST
## ALL DEFENDANTS FOR FRAUD

103.   Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 102 above as if fully restated herein.

104.   As described more fully herein, defendants made false and misleading representations of material fact to plaintiff.

105.   The materially false or misleading representations include:

a.   In November 2012, Liza Faragita and defendant American Healthcare, acting on behalf of all defendants, told plaintiff that the defendants would employ him as a full-time physical therapist immediately upon issuance of a limited permit;

b.   In January, February, and March 2013, defendants Urbino and Axis Point, acting on behalf of all defendants, told plaintiff that defendants would employ him as a full-time physical therapist immediately upon passing the licensing exam and obtaining his New York State physical therapist license;

c.   In November 2013, defendants Libiran and American Manpower, acting on behalf of all defendants, told plaintiff that defendants would employ him as a full-time physical therapist immediately upon his arrival in New York.

106.   The representations set forth above were false at the time they were made.

107.   Defendants knew that the representations set forth above were false at the time they were made.

108.   Plaintiff reasonably and justifiably relied on defendants' representations described above.

109.    Defendants held themselves out to the public as having superior knowledge and experience than plaintiff, and in fact had superior knowledge and experience than plaintiff, in the areas of employment laws, rules, regulations and practices in the United States.

110.    Defendants held themselves out to the public as Filipino-Americans who could be trusted to help a fellow Filipino.

111.    Plaintiff was injured financially by reason of defendants' false representations. Plaintiff's injuries include: the time and expense of traveling from the Philippines and living in New York City; the loss of opportunities to work for other, legitimate employers; and the difference between the amounts he was actually paid and the amounts defendants promised to pay.

## EIGHTH CLAIM FOR RELIEF AGAINST
## ALL DEFENDANTS FOR UNJUST ENRICHMENT

112.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 111 above as if fully restated herein.

113.    Plaintiff alleges and believes that he entered into a valid and binding contract with the defendants. In the event the Contract is found not to be enforceable, or that the Contract did not cover all of plaintiff's labor and services, then plaintiff pleads this claim for unjust enrichment in the alternative.

114.    By reason of the facts alleged herein, defendants benefited financially and otherwise.

115.    Defendants benefited at plaintiff's expense.

116.    Plaintiff reasonably expected to receive the benefits that defendants obtained at his expense.

117.   Equity and good conscience require that defendants pay restitution to plaintiff for the benefits they received.

## NINTH CLAIM FOR RELIEF AGAINST
## ALL DEFENDANTS FOR *QUANTUM MERUIT*

118.   Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 117 above as if fully restated herein.

119.   Plaintiff alleges and believes that he entered into a valid and binding contract with the defendants.  In the event the Contract is found not to be enforceable, or that the Contract did not cover all of plaintiff's labor and services, then plaintiff pleads this claim for *quantum meruit* in the alternative.

120.   Through his labor and services, plaintiff conferred significant benefits on defendants.

121.   Defendants accepted these benefits.

122.   Plaintiff reasonably expected to be fairly and equitably compensated for his labor and services in good faith.

123.   Defendants failed to provide plaintiff with appropriate payment for the conferred benefits, the value of which are calculable.

124.   Defendants are liable under *quantum meruit* for the value of labor and services that plaintiff provided.

125.   Plaintiff suffered harm as a result of defendants' failure to provide him with adequate compensation, for which plaintiff is entitled to recover damages in an amount to be determined at trial.

### Jury Demand

126.   Plaintiff is entitled to and demands a jury trial.

## Prayer for Relief

**WHEREFORE** plaintiff Dustin Mark Macolor requests judgment against all defendants, jointly and severally, awarding him compensatory and punitive damages in amounts to be determined at trial, liquidated damages as authorized by 29 U.S.C. § 216(b), statutory damages as authorized by 15 U.S.C. § 1692k, reasonable attorneys' fees and the costs of this action as authorized by 29 U.S.C. § 216(b), 18 U.S.C. § 1595(a), and 15 U.S.C. § 1692k, and such other and further relief as this Court deems just and proper.

Dated: New York, New York
     June 24, 2014

JOHN HOWLEY, ESQ.

By:

   John J.P. Howley [JH9764]
*Attorney for Plaintiff*
350 Fifth Avenue, 59th Floor
New York, New York  10118
(212) 601-2728