UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

DUSTIN MACOLOR,

                            Plaintiff,

           -v-

RHANDY R. LIBIRAN et al.,

                        Defendants.

-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _03/18/2015_

14-CV-4555 (JMF)

MEMORANDUM OPINION
AND ORDER

JESSE M. FURMAN, United States District Judge:

       It is with great dismay that the Court must, for a third time, address the misconduct of

defense counsel, Carlos G. Garcia, in connection with this litigation.[1]  As the full scope of his

earlier misconduct is thoroughly laid out in the Court's prior orders, familiarity with which is

assumed, the Court will provide only an abbreviated summary here.  (*See* Docket Nos. 28, 36).

By Order entered October 21, 2014, the Court sanctioned Garcia for his failures to obey "clear

and unambiguous" court orders on "multiple occasions" (including but not limited to his failure

to appear in a timely fashion at the initial pretrial conference, his failure to reimburse Plaintiff's

counsel as directed, his failure to provide a settlement offer as directed, and his failure to

cooperate in drafting a joint letter as directed).  (Docket No. 28).  The Court ordered Garcia to

pay Plaintiff's counsel $2,000 no later than October 31, 2014.  (*Id.*).  By Memorandum Opinion

and Order entered January 23, 2015, the Court sanctioned Garcia again after he failed to appear

for another pretrial conference and failed to respond to an order to show cause why he should not

---

[1]        On March 13, 2015, Garcia filed a "Notice of Withdrawal of Counsel," purporting to
withdraw as counsel of record in this matter.  (Docket No. 45).  By Order entered March 16,
2015, however, the Court struck Garcia's Notice as deficient in light of Rule 1.4 of this Court's
Local Civil Rules, which permits counsel to withdraw "only by order of the Court."  S.D.N.Y.
Local Civ. R. 1.4.  (*See* Docket No. 47).

be sanctioned.  (Docket No. 36).  Citing Garcia's "disturbing disregard for the Court's orders and lack of respect for the Court and opposing counsel," the Court ordered Garcia to pay $1,000 directly to Plaintiff's counsel and to pay an additional $3,000 to the Clerk of the Court.  (*Id*. at 1, 4).  Both payments were to be made no later than February 6, 2015.  (*Id*. at 4).

Garcia filed a letter motion on February 6, 2015 — the deadline for payment of his sanctions — seeking a stay and reconsideration of the sanction and making several troubling representations in an effort to explain his actions throughout the course of this litigation. (Docket No. 39).  First, he explained his failure to timely appear at a September 18, 2014 pretrial conference by noting that he "had been out of the country (in the Philippines) on a very urgent family matter" and that "it was only upon [his] arrival back to New York" that he learned that he had missed a pretrial conference.  (*Id.* at 1).  That representation was plainly contradicted, however, by the fact Garcia *actually appeared* at the conference in question — albeit more than hour after it was scheduled to begin (at which point it had already been canceled) — and insisted that a member of the Court's staff note his appearance.  (*See* Docket No. 23).  It was also contradicted by Garcia's own representation to the Court's staff and again at the rescheduled initial pretrial conference, held on September 23, 2014, when he claimed that he had missed the earlier conference due to traffic.  (*See* Pretrial Conf. Tr., Sept. 23, 2014, at 2-3).  Second, Garcia represented that, on December 19, 2014, the day that he missed the second pretrial conference, he had driven to Manhattan and was near the courthouse when the conference was canceled; Garcia claimed that his failure to appear on time was the result of a real estate closing that took longer than expected and "unusually heavy" traffic.  (Docket No. 39, at 1-2).  On February 7, 2015, Plaintiff's counsel submitted a letter alleging that these and other statements in Garcia's letter motion were false and noting that Garcia had not complied with the Court's order requiring

him to pay sanctions by February 6, 2015.  (Docket No. 40).

On February 11, 2015, noting that Garcia's February 6, 2015 submission "only increase[d] the Court's concerns" about his conduct, the Court ordered Garcia to file a sworn affidavit or declaration under penalty of perjury "describing in detail his reasons for missing the prior court conferences and deadlines (that is, reiterating and elaborating on the explanations set forth in his February 6th letter)" and attaching "evidence supporting his representations, including but not limited to receipts and tickets documenting his purported travel to the Philippines at the time of the September 2014 conference, cell phone records reflecting the calls he made to the Court in December 2014, and any other information necessary to substantiate statements made in his affidavit."  (Docket No. 42, at 2).  In addition, the Court ordered Garcia to show cause in writing why he should not be further sanctioned "(1) in the event that the Court finds that he made false representations (whether under oath or otherwise) to the Court; and/or (2) for failing to obey the Court's Order of January 23, 2015 to pay the sanctions on or before February 6th."  (*Id.* at 2-3).  With respect to the latter, the Court reminded Garcia that "a letter requesting a stay or reconsideration does not automatically stay the Court's prior order" and that Garcia was therefore in violation of the January 23, 2015 Order requiring him to pay sanctions by February 6, 2015.  (*Id.* at 2-3 (citing *Tekkno Labs., Inc. v. Perales*, 933 F.2d 1093, 1099 (2d Cir. 1991), and *New Pac. Overseas Grp. (USA) Inc. v. Excal Int'l Dev. Corp.*, No. 99-CV-2436 (DLC), 2000 WL 377513, at *7 (S.D.N.Y. Apr. 12, 2000)).  (The Court also denied Garcia's motion for reconsideration and a stay, noting that he had "present[ed] no basis to reconsider, let alone stay, the Court's prior Order."  (*Id.* at 1-2).)

On February 17, 2015, Garcia filed an affidavit under penalty of perjury.  (Docket No. 44).  Continuing the pattern described above, however, the submission only deepens the hole that

3

Garcia has been digging for himself.  First, the affidavit fails to say anything about Garcia's failure to comply with the Court's Order of January 23, 2015, requiring him to pay sanctions on or before February 6th.  (As of the date of this Memorandum Opinion and Order, Garcia still has not made the required payment to the Clerk of Court.  The record is unclear as to whether he has made the required payment to Plaintiff's counsel, although he had not done so by the February 6th deadline.  (*See* Docket No. 40).)  In his affidavit, Garcia does ask the Court "to reconsider [the] order, dated February 11, 2015, imposing sanction [sic] and fine . . . and also to stay the sanction and fine."  (Docket No. 44, at 1).  But the Court's February 11, 2015 Order did not impose the sanction — it merely ordered Garcia to submit the affidavit and show cause why he should not be further sanctioned.  (Docket No. 42).  In any event, as the Court noted explicitly in the February 11th Order, the law is well established that "neither a motion for reconsideration nor a motion for a stay has the effect of staying a court order."  (*Id.* at 3).  Thus, Garcia presents no reason that he should not be sanctioned further for his failure to pay the previous sanctions.[2]

Even more troubling, a cursory comparison of the affidavit and Garcia's February 6th letter motion makes plain that Garcia has made false statements intended to mislead the Court. As noted, the letter motion represented that Garcia had been out of the country attending to a family emergency at the time of the aborted September 18th conference and that he learned that he had missed the conference only upon his return.  (Docket No. 39, at 1).  That statement was plainly false.  After all, Garcia actually *appeared* (albeit belatedly) at the September conference (*see* Docket No. 23), and he represented to the Court's staff and at the conference five days later

---

[2]     To the extent that Garcia requests reconsideration and a stay of the February 11, 2015 Order, the request is moot (and meritless in any event).  To the extent that he — again — seeks reconsideration and a stay of the prior sanctions, the request is denied, substantially for the reasons given in the Court's February 11, 2015 Order.  That is, "Garcia presents no basis to reconsider, let alone stay, the Court's prior Order."  (Docket No. 42, at 2).

that he had been tardy due to traffic (*see* Pretrial Conf. Tr., Sept. 23, 2014, at 2-3).  Perhaps

unsurprisingly, therefore, Garcia's sworn affidavit implicitly retracts the statement, asserting

only that he visited the Philippines between August 21, 2014, and September 14, 2014.  (Docket

No. 44, at 4).  In addition, Garcia's travel itinerary and a copy of his passport appear to confirm

that Garcia was scheduled to return from the Philippines — and did, in fact, return from the

Philippines — in advance of the conference.  (*See id.*, Ex. C).  The obvious conclusion is that

Garcia lied in his letter motion when he claimed that his travel to the Philippines had caused him

to miss the initial pretrial conference.  Accordingly, the Court finds that Garcia falsely stated that

he was out of the country for the first conference and that he learned about the conference only

upon his return from the Philippines.

       Upon review of the affidavit, the Court also finds that Garcia has made false statements

— including false statements under oath — about his failure to attend the December 19th pretrial

conference.  As noted, Garcia stated in his February 6th letter motion that, on December 19,

2014, he drove to Manhattan and was already "within [New York] City and not far off from the

Courthouse" when the conference was adjourned.  (Docket No. 39, at 2).  In his sworn affidavit

Garcia reiterates this story, averring that he chose to drive to the conference, rather than take the

train as he had planned, because he was already running late from the real estate closing.

(Docket No. 44, at 2-3).  He further states that he did not inform his office of that decision until

after the conference had been adjourned and that is the reason why his office had emailed

Plaintiff's counsel stating that Garcia would be taking a train that day.  (Docket No. 44, at 2-3;

*see also id.*, Ex. 1 (affidavit of Garcia's secretary stating that he did not know about Garcia's

decision until Garcia called him after the conference was adjourned)).

       Once again, however, Garcia's account is inconsistent with the record, including his own

contemporaneous representations to the Court.  The Court's staff spoke to Garcia on December 19, 2014, after he did not appear at the 1:45 p.m. conference.  During that call, Garcia himself — not his secretary — represented that he was on a train to New York City and that would be arriving at Pennsylvania Station in Manhattan shortly before 2:30 p.m.  Notably, that is consistent with the email that Garcia's office sent Plaintiff's counsel stating that he "will be arriving at Penn Station at 2:22 PM."  (Docket No. 40, Ex. 1).  In addition, Garcia himself told the Court's staff that he would take a taxi from the train station to the Courthouse in order to arrive as soon as possible.  Both statements are obviously inconsistent with Garcia's assertion that he drove to New York City that day.[3]  Accordingly, the Court finds that Garcia's account of driving from Babylon to New York — including statements made under oath in his February 17th affidavit — was yet another deliberately false account to the Court.[4]

---

[3]     Garcia's story is also belied by his cellphone records.  In his February 6th letter motion, Garcia claimed that he was "not too far off from the Courthouse" in Manhattan when he received a call from the Court's staff advising him that the conference had been adjourned.  (Docket No. 39, at 2; *see also* Docket No. 44, at 3).  His cellphone records, however, reveal only two calls from the Court (212-805-0003) to Garcia — at 1:55 p.m. and 1:58 p.m. when he was in Springfield and Jamaica, respectively.  (Docket No. 44, Ex. B).  Notably, the cellphone records indicate that Garcia was never closer to the Court than Jamaica, Queens, on December 19, 2014.

[4]     In his affidavit, Garcia points to his cellphone records for December 19, 2014, as proof of his car travel from Babylon to New York City.  (Docket No. 44, at 2-3; *see id.*, Ex. B).  It is worth noting that the cellphone records are anything but proof of Garcia's account, and not just for the reasons stated in the previous footnote.  Attached as Appendix A to this Memorandum Opinion and Order is a table comparing the time and location of the calls reflected on the cellphone records with the schedule for the Long Island Railroad train that is due in Pennsylvania Station from Babylon at 2:22 p.m. — that is, the train that Garcia told his office that he would be taking and that would have put him at Pennsylvania Station just before 2:30, which is consistent with his representations to the Court's staff.  The table reveals that the calls Garcia placed between 1:00 and 2:00 p.m. on December 19, 2014, correspond *almost exactly* to when the train was scheduled to arrive at no fewer than *six* stations along the train route from Babylon to New York City.  *See* App. A.  It is no great leap to conclude that Garcia was calling the Court, Plaintiff's counsel, and his office as the train progressed along its route — as Garcia himself represented on that day.  The Court does not base its findings or sanctions on the Long Island Railroad schedule, as it is not in the record, but it does support the Court's conclusions.

In light of the foregoing record, the Court is compelled to impose additional sanctions on Garcia.  First, Garcia's failure to pay the sanctions imposed almost two months ago is exactly the type of "repeated failure[] to comply with court orders" that Courts within this Circuit have found sufficient to justify severe monetary sanctions under Rule 16 of the Federal Rules of Civil Procedure and the Court's inherent authority — the authority under which the Court imposed the previous sanction.  *Mahoney v. Yamaha Motor Corp. U.S.A.*, 290 F.R.D. 363, 371 (E.D.N.Y. 2013).[5]  Indeed, on its own, the failure to pay sanctions is a serious form of misconduct that can justify a finding of contempt or, in egregious cases, imprisonment.  *See, e.g.*, *Adams v. New York State Educ. Dep't*, 959 F. Supp. 2d 517, 520 (S.D.N.Y. 2013).  The Court is not prepared to go that far — yet — but it does believe that Garcia's failure to pay the previously imposed sanctions justifies further monetary sanctions (sanctions that will increase automatically if Garcia fails to pay) and a formal referral to this Court's Grievance Committee.  (The Court previously sent its January 23rd Memorandum Opinion and Order to the Chair of the Grievance Committee (*see* Docket No. 36, at 5), but it did not formally refer the matter to the Committee.)

Second, Garcia's false statements provide an additional basis for further sanctions.  Rule 11 of the Federal Rules of Civil Procedure authorizes a Court to impose sanctions for deliberately making false statements to the Court.  *See SEC v. Smith*, 710 F.3d 87, 97 (2d Cir.

---

[5]      Garcia's February 6th letter motion also appears to suggest that sanctions are not necessary or appropriate because his actions did not cause any delay in the case.  (Docket No. 39, at 3).  Even assuming the truth of that statement, it does not affect the Court's conclusion.  "[A] district court may impose a punitive sanction for the filing of a paper that lacks factual foundation and is intended to mislead the Court . . . , even if the[re is] no[] significant[] delay [in the] proceedings, because of the disrespect shown to judicial process."  *Kleehammer v. Monroe Cnty.*, No. 09-CV-6177 (CJS), 2013 WL 1182968, at *19 (W.D.N.Y. Mar. 20, 2013) (internal quotation marks omitted).

2013).  Although sanctions under Rule 11 are typically imposed pursuant to a motion by the opposing side, a Court may impose Rule 11 sanctions *sua sponte* upon a finding of "subjective bad faith" on the part of the individual to be sanctioned.  *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013).  "[C]ourts in this Circuit have found subjective bad faith in a variety of cases, ranging from those involving overtly dishonest or contemptuous behavior, down to those where the court simply regarded an argument as frivolous."  *Cardona v. Mohabir*, No. 14-CV-1596 (PKC), 2014 WL 1804793, at *3 (S.D.N.Y. May 6, 2014) (internal quotation marks omitted); *see also id.* (collecting cases defining "subjective bad faith").  Whatever the appropriate definition, making a false statement with the intent to mislead the Court certainly meets that definition.  *See Smith*, 710 F.3d at 97 (equating subjective bad faith with the question of whether an individual "made a false statement to the court . . . in bad faith"); *see also In re Gushlak*, No. 11-MC-218 (NGG), 2012 WL 2564523, at *2 (E.D.N.Y. July 2, 2012) (observing that while some Courts have found "subjective bad faith" only in cases "involving overtly dishonest or contemptuous behavior," many others have applied a more lenient standard).

In this case, there is no doubt that Garcia's false statements were knowing and intended to mislead the Court.  As noted, Garcia's letter motion sought reconsideration of the sanction imposed on January 23, 2015.  With that in mind, it is obvious that the letter motion sought to portray Garcia's conduct in the most favorable light possible in the hope that the Court would excuse, at least partially, his previous misconduct and reduce the sanction.  Thus, Garcia asserted that he missed the first conference only because he was out of the country attending to a family emergency.  (Docket No. 39, at 1).  And he claimed that he missed the second conference only because "Murphy's Law prevailed" and he was late despite his change of plans and his best efforts to arrive on time.  (*Id.* at 2).  Those statements were patently and knowingly false.  And

8

while the Court gave Garcia an opportunity to clarify (or correct) the record through a sworn affidavit, his affidavit of February 17th did anything but.  If anything, he doubled down by making additional false statements about the second missed pretrial conference.  In short, Garcia made multiple false statements — including false statements under oath — in an effort to mislead the Court.  By doing so, he justified additional sanctions, this time under Rule 11.

Accordingly, pursuant to Rules 11 and 16 of the Federal Rules of Civil Procedure as well as the Court's inherent authority, the Court imposes further sanctions on Garcia.  Specifically, no later than **March 27, 2015**, Garcia shall pay an additional $6,000 — that is, double the previous sanction payable to the Court (*i.e.*, not including the payment intended to compensate Plaintiff's counsel for his time and expense) — to the Clerk of the Court (on top of the $3,000 already overdue).  (*See* Docket No. 36).   Although that is a significant sum, the Court concludes that it is no "more severe than reasonably necessary to deter repetition of [Garcia's] conduct . . . or comparable conduct by similarly situated persons."  *Weiss v. Weiss*, 984 F. Supp. 682, 686 (S.D.N.Y. 1997) (internal quotation marks omitted).  Among other things, in imposing the most recent sanction, the Court warned Garcia that continued failure to obey the Court's orders would result in more severe sanctions.  (Docket No. 36, at 5).  Despite that warning, he has disregarded two Court orders to pay the sanction and further upped the ante by lying to the Court in effort to have the sanction reconsidered.  Thus, the previous sanction was plainly insufficient to deter Garcia's continued misconduct.  Additionally, so long as any amount of the sanctions owed to the Court or Plaintiff's counsel remains unpaid, Garcia shall automatically be sanctioned an additional $1,000 for every week that passes after March 27, 2015.  *See Servaas Inc. v. Republic of Iraq*, No. 09-CV-1862 (RMB), 2014 WL 279507, at *5 (S.D.N.Y. Jan. 24, 2014) (collecting cases imposing escalating sanctions under Rule 37); *see also* Fed. R. Civ. P. 16(f)(1) (providing

that the remedies authorized under Rule 37 may be appropriate for a sanction imposed under Rule 16).  Finally, pursuant to Rule 1.5 of the Local Civil Rules, the Court formally refers this matter to the Chief Judge for referral, in turn, to the Committee on Grievances to conduct an appropriate inquiry into Garcia's conduct throughout this litigation.

It is further ORDERED that, no later than **March 23, 2015**, Garcia shall serve *each* Defendant (individual and corporate) with a copy of this Memorandum Opinion and Order and file proof of service on the docket via ECF.[6]

SO ORDERED.

Dated: March 18, 2015
       New York, New York

JESSE M. FURMAN
United States District Judge

---

[6]     On January 20, 2015, Plaintiff filed a motion for sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure.  (Docket No. 33).  This Memorandum Opinion and Order does not address the issues raised therein, which the Court will address by separate Opinion in due course.

# Appendix A

| Train Station | Arrival Time | Call Time | Origination |
|---|---|---|---|
| Babylon | 1:11 PM | | |
| Lindenhurst | 1:16 PM | | |
| Copiague | 1:19 PM | | |
| Amityville | 1:22 PM | | |
| Massapequa Park | 1:25 PM | | |
| Massapequa | 1:27 PM | | |
| Seaford | 1:29 PM | | |
| Wantagh | 1:32 PM | | |
| Bellmore | 1:35 PM | 1:35 PM | Bellmore |
| Merrick | 1:38 PM | 1:38 PM | Merrick |
| Freeport | 1:41 PM | 1:40 PM | Freeport |
| Baldwin | 1:44 PM | 1:44 PM | Baldwin |
| Rockville Centre | 1:47 PM | 1:48 PM | Rockville Centre |
| Lynbrook | 1:50 PM | | |
| Jamaica (Arrive) | 2:02 PM | 1:58 PM | Jamaica |
| Jamaica (Leave) | 2:03 PM | 1:59 PM | Jamaica |
| Hunterspoint Ave | ------ | | |
| Kew Gardens | ------ | | |
| Forest Hills | ------ | | |
| Woodside | 2:12 PM | | |
| Penn Station | 2:22 PM | | |

Sources: Docket No. 44, Ex. B; Babylon Branch Timetable (Effective Dec. 15, 2015 – Mar. 15, 2015), *available at* http://web.mta.info/lirr/Timetable/Branch/BabylonBranch.pdf